U.S. COURT OF APPEALS
RECEIVED
CLERK
DEC 05 2022
ATLANTA, GA

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

NO-19-14279, 22-12968

7021 1970 0001 3029 7270

JAMAAL A. HAMEEN,
Petitioner,

v.

UNITED STATES OF AMERICA,
Respondent.

APPELLANT'S PRO SE INITIAL BRIEF

Due Process provides that the rights of pro se litigants are to be construed liberally and held to less stringent standard than formal pleading drafted by lawyers, if a court can reasonably read pleading to state valid claims on which litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigants unfamiliarity with pleading requirements, Spencer v. Doe, (1998), Green v. Branson, (1997), Boag v. McDougal, (1998), and of course Haines v. Kerner, (1972).

STATEMENT OF FACTS

On October 17, 2019, Petitioner was sentenced, over his objections to the entire sentencing hearing, the 2008 sale of cocaine offense used to enhance his sentence under 18 U.S.C. §924(e); to the entire PSI as hearsay; to the 922(g)(1) arrest, trial and conviction, and the violation of his Second Amendment Rights, just to name a few. Whereas were it not for the unconstitutional prosecution for violating 18 U.S.C. 922(g)(1) Mr. Hameen would not have been a victim to the deliberate indifference that he had to endure where the Court, The Government, Eric Roper and Douglas Hill Clifton, knew that the September 11, 2015 memo from the Department of Justice removed any civil or criminal liability for possession, sale, or distribution of Ioflupane. The indifference lead to an Eighth Amendment violation of Mr. Hameen rights against excessive punishment and

cruel and unusual punishment, that was perpetuated by the unconstitutional arrest, trial and conviction for felon in possession of firearm offense, where Mr. Hameen's conduct was not outside of the scope of the conduct that is protected by the Second Amendment. Also see The Rights and guarantees provided in the 4th, 5th, 6th, 8th, 9th and 10th Amendments, and to the 180 months and the supervised release attached to the unconstitutional, arrest, trial, conviction, and sentence, Especially where Mr. Hameen was never afforded the "Rightful" Due Process and Fair Notice. Petitioner's sentence for a 18 U.S.C. 922(g)(1); felon in possession offense, Mr. Hameen's offense of conviction, included a enhancement pursuant to 18 U.S.C. §924(e) (Armed Career Criminal Act). The Government over Mr. Hameen objection relied upon the following convictions in support of the ACCA enhancement. To wit, Mr. Hameen's (1) 1990 Florida Aggravated Assault conviction, (2) a 2008 sale of cocaine (Ioflupane) and (3) a 2015 sale of heroin.

## ARGUMENT

**The Petitioner States That The District Court Erred When It Misapplied The Sentence Enchancement(s) Under The A.C.C.A. (18 U.S.C. §924(e)) Based On Non-Qualifying Predicate Convictions.**

1. Mr. Hameen states that his cocaine related conviction does not qualify as an ACCA predicate offense. According to the definition of a "serious drugs offense", which means, as relevant here, "an offense under state law involving ... distributing, or possessing with intent to ... distribute. A controlled substance (as defined in section 102 of the Controlled Substance Act (21 U.S.C. §802)), for which a maximum term of imprisonment of ten years or more is prescribed by law," 18 U.S.C. §924(e).

2. Mr. Hameen states that 18 U.S.C . §924(e) no longer applies to the enhancement of his sentence in regards to the assessment of his cocaine related conviction to qualify Mr. Hameen to an increased punishment.

3. Mr. Hameen contends that his cocaine related conviction that F.S. 893.13

prohibited when his cocaine related conviction occurred encompassed, among other things, the sale of, possession w/intent to distribute, Ioflupane. However, when Mr. Hameen possessed the firearm here, Ioflupane was not a "controlled substance offense" for purposes of the "serious drug offense" definition in 18 U.S.C. §924(e).

4. Mr. Hameen urges that categorically a cocaine related offense committed under F.S. 893.13 can not now qualify as a "Serious Drug Offense" under the "ACCA" without an Expos Facto violation.

The Eleventh Circuit Court of Appeal are bound by Federal Law when it interpreting the terms in the ACCA and are bound by State law when it interprets the elements of State law crimes. See United States v. Conage, 976 F.3d 1244, 1249 (11th Cir. 2020) to determine whether a state conviction qualifies as a serious drug offense for the ACCA enhancement.

Thus Mr. Hameen sentence for violating 18 U.S.C §922(g)(1) and §924(e) should be reversed, vacated and remanded for resentencing since he was not an armed career criminal under 18 U.S.C. §924(e), because his prior state conviction for violating F.S. 893.13 in 2008, is not a serious drug offense under §924(e).

Mr. Hameen must be resentenced for the Federal offense 18 U.S.C. §922(g)(1) & §924(e), because his prior state conviction for violating F.S. 893.13 sale of cocaine is not a controlled substance offense under U.S.S.G. §4B1.2 or "Serious Drug Offense" under the A.C.C.A. §924(e), as Fla. Stat. 893.13 drug schedule is categorically overbroad because it included substances other than those listed in the Federal Regulatory Drug Schedules. Fla. Stat. 893.13 is overbroad when compared with the Federal Regulatory Drug Schedule.

At the time of Mr. Hameen's Federal offense 18 U.S.C. §922(g)(1), and §924(e), the Controlled Substance Act (21 U.S.C. §802) and 18 U.S.C. §924(e), defined a "Controlled substance offense" and "Serious Drug Offense" to mean a drug or other substance, or immediate precursor included in schedule I, II, III,

IV, or V of part B of this subchapter, 21 U.S.C. §802(6), for its part in October 17, 2019, schedule 2 included several cocaine related substances in 21 U.S.C. §812(c), schedule 2(a)(4), but it clearly : excluded **Ioflupane** and stereoisomers that were not **"optical"** or **"geometrical"**. While Florida statute 893.13 includes any "steroisomers and any salt, compound, derivatives or preparation of cocaine or ecgonine" (quoting Fla. stat. §893.03(2)(a)(4)). Thus, a "mis-match" exists between the Federal and State drug schedules. See United States v. Jackson, 36 F.4th 1294 (11th cir. 2022), and United States v. McCobb, case no. 20-12263.

Therefore, the Controlled Substance's Act definition of a "Serious Drug Offense" excludes Ioflupane and any steroisomers that are not optical or geometrical. Thus, making Mr. Hameen's state prior conviction for the sale of cocaine overbroad and unconstitutional and does not support his enhancement pursuant to 18 U.S.C. §924(e).

In closing Mr. Hameen would cite that he moved the District Court to notify This Court of it ability to correct this Miscarriage of Justice by issuing an indicative ruling, which was denied, leaving Mr. Hameen to asks to his appellate attorney to adopt his pleadings because he was still within the three year window period for receiving a new trial and/or resentencing, based on the decision in United States v. Jackson, id.

However, the District Court denied Mr. Hameen petition for an indicative ruling based on the fact This Court did not issue a mandate in the United States v. Jackson, id. even though Mr. Hameen made the District Court aware of the decision in Martin v. Singletary, 965 F.2d 944,945 n.1 (11th Cir. 1992). which states that "published opinions are binding precedent" and that "the courts in this circuit have a duty to apply the binding precedent established by the published opinions 'whether the mandate was issued or not in the opinion' even before a mandate issues." Mr. Hameen would like to alert This Court of the potential Expos Facto constitutional violation and would like to preserve his

claim for future litigation.

Mr. Hameen wholly believes that because the court, the probation division, the government and Mr. Hameen's counsels knew or should have known that the United States Government had de-scheduled Ioflupane on September 11, 2015, (see exhibit "A"), and that Mr. Hameen's state prior conviction are categorically overbroad as well, and that his current sentence of 180 months is wholly unconstitutional and thus divested the court of jurisdiction to render the enhancement, and the first step to correcting this miscarriage of justice is to vacate and remand Mr. Hameen case back to the District Court for further proceedings with the appointment of conflict free counsel.

Done and executed on the 1st day of December 2022.

All Rights Reserved.

/s/_______________

Jamaal A. Hameen
Reg. No.: 70797-018
FCI-Jesup
2680 Highway 301 South
Jesup, Ga. 31599

U.S. COURT OF APPEALS RECEIVED CLERK DEC 05 2022 ATLANTA, GA

United States Court of Appeals
For the Eleventh Circuit
No: 19-14279, 22-12968

*United States of America v. Jamaal Hameen*

CERTIFICATE OF INTERESTED PERSONS:

The persons listed below are interested in the outcome of this case:

Bentley, III, A. Lee

Bodnar, Roberta Josephina

Cakmis, Rosemary

Clifton, Douglas Hill

Elm, Donna Lee

Hameen, Jamaal Abu Talib

Howard, Katherine G.

Howard, The Honorable Marcia Morales

Klindt, The Honorable James R.

Korody, Patrick Kane

Lopez, Maria Chappa

Mesrobian, David B.

Muldrow, W. Stephen

O'Neill, Robert E.

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
NO: 19-14279, 22-12968

*United States of America v. Jamaal Hameen*

CERTIFICATE OF INTERESTED PERSONS – *CONTINUED*

Rhodes, David P.

Roper, Christopher Eric

Shorstein, Paul A.

Skuthan, James T.

Talbot, II, Frank Merrill

Toomey, The Honorable Joel B.

Yazgi, Susan Good

No publicly traded company or corporation has an interest in the outcome of this appeal.

ALL RIGHTS RESERVED,

Jamaal A. Hameen
REG. NO: 70797-018
FEDERAL CORRECTIONAL INSTITUTION - JESUP
2680 HIGHWAY 301 SOUTH
JESUP, GA. 31599-0001

**CERTIFICATE OF SERVICE**

I Jamaal A. Hameen, hereby certify under the penalty of perjury that the foregoing is true and correct and that this Initial Brief was deposited in the FCI JESUP Medium prison mailing system with adequate postage to effectuate delivery via U.S. Mail addressed to all Interested Persons.

Signed and dated this 1st day of December 2022.

Respectfully Submitted,

/s/________________

Jamaal A. Hameen
Reg. 70797-018
FCI Jesup
2680 Highway 301 South
Jesup, Ga. 31599

EXHIBIT A

U.S. DEPARTMENT OF JUSTICE ★ DRUG ENFORCEMENT ADMINISTRATION

DIVERSION CONTROL DIVISION

Search

HOME REGISTRATION REPORTING RESOURCES ABOUT US

RESOURCES > Federal Register Notices > Rules - 2015 > Final Rule: Removal of [$^{123}$I]ioflupane From Schedule II of the Controlled Substances Act

Rules - 2015

[Federal Register Volume 80, Number 176 (Friday, September 11, 2015)]
[Rules and Regulations]
[Pages 54715-54718]
From the Federal Register Online via the Government Publishing Office [www.gpo.gov]
[FR Doc No: 2015-22919]

DEPARTMENT OF JUSTICE

Drug Enforcement Administration

21 CFR Part 1308

[Docket No. DEA-415F]

Schedules of Controlled Substances: Removal of [$^{123}$I]Ioflupane From Schedule II of the Controlled Substances Act

AGENCY: Drug Enforcement Administration, Department of Justice.

ACTION: Final rule.

SUMMARY: With the issuance of this final rule, the Administrator of the Drug Enforcement Administration removes [$^{123}$I]ioflupane from the schedules of the Controlled Substances Act. This action is pursuant to the Controlled Substances Act which requires that such actions be made on the record after an opportunity for a hearing through formal rulemaking. Prior to the effective date of this rule, [$^{123}$I]ioflupane was, by definition, a schedule II controlled substance because it is derived from cocaine via ecgonine, both of which are schedule II controlled substances. This action removes the regulatory controls and administrative, civil, and criminal sanctions applicable to controlled substances, including those specific to schedule II controlled substances, on persons who handle (manufacture, distribute, reverse distribute, dispense, conduct research, import, export, or conduct chemical analysis) or propose to handle [$^{123}$I]ioflupane.

DATES: Effective Date: September 11, 2015.

FOR FURTHER INFORMATION CONTACT: John R. Scherbenske, Office of Diversion Control, Drug Enforcement Administration; Mailing Address: 8701 Morrissette Drive, Springfield, Virginia 22152; Telephone: (202) 598-6812.

SUPPLEMENTARY INFORMATION:

Legal Authority

The Drug Enforcement Administration (DEA) implements and enforces titles II and III of the Comprehensive Drug Abuse Prevention and Control Act of 1970, as amended. 21 U.S.C. 801-971. Titles II and III are referred to as the "Controlled Substances Act" and the "Controlled Substances Import and Export Act," respectively, and are collectively referred to as the "Controlled Substances Act" or the "CSA" for the purpose of this action. The DEA publishes the implementing regulations for these statutes in title 21 of the Code of Federal Regulations (CFR), chapter II.

[[Page 54716]]

The CSA and its implementing regulations are designed to prevent, detect, and eliminate the diversion of controlled substances and listed chemicals into the illicit market while ensuring an adequate supply is available for the legitimate medical, scientific, research, and industrial needs of the United States. Controlled substances have the potential for abuse and dependence and are controlled to protect the public health and safety.

Under the CSA, each controlled substance is classified into one of five schedules based upon its potential for abuse, its currently accepted medical use in treatment in the United States, and the degree of dependence the substance may cause. 21 U.S.C. 812. The initial schedules of controlled substances established by Congress are found at 21 U.S.C. 812(c), and the current list of scheduled substances is published at 21 CFR part 1308.

Pursuant to 21 U.S.C. 811(a)(2), the Attorney General may, by rule, "remove any drug or other substance from the schedules if he finds that the drug or other substance does not meet the requirements for inclusion in any schedule." The Attorney General has delegated scheduling authority under 21 U.S.C. 811 to the Administrator of the DEA, 28 CFR 0.100.

The CSA provides that proceedings for the issuance, amendment, or repeal of the scheduling of any drug or other substance may be initiated by the Attorney General (1) on her own motion, (2) at the request of the Secretary of the Department of Health and Human Services (HHS),\1\ or (3) on the petition of any interested party. 21 U.S.C. 811(a). This action was initiated at the request of the Assistant Secretary for Health of the HHS, and is supported by, inter alia, a recommendation from the Assistant Secretary of the HHS and an evaluation of all relevant data by the DEA. This action removes the regulatory controls and administrative, civil, and criminal sanctions applicable to controlled substances, including those specific to schedule II controlled substances, on persons who handle or propose to handle [$^{123}$I]ioflupane.

---

\1\ As discussed in a memorandum of understanding entered into by the Food and Drug Administration (FDA) and the National Institute on Drug Abuse (NIDA), the FDA acts as the lead agency within the HHS in carrying out the Secretary's scheduling responsibilities under the CSA, with the concurrence of NIDA. 50 FR 9518, Mar. 8, 1985. The Secretary of the HHS has delegated to the Assistant Secretary for Health of the HHS the authority to make domestic drug scheduling recommendations. 58 FR 35460, July 1, 1993.

---

Background

[$^{123}$I]Ioflupane is, by definition, a schedule II controlled substance because it is derived from cocaine, a schedule II substance, via ecgonine (a schedule II substance). See 21 U.S.C. 812(c), Schedule II, (a)(4). [$^{123}$I]Ioflupane is the active pharmaceutical ingredient (API) in the drug product DaTscan and it is a new molecular entity. The Food and Drug Administration (FDA) approved the New Drug Application (NDA) for DaTscan on January 14, 2011, for the indication of visualizing striatal DATs in the brains of adult patients with suspected Parkinsonian syndromes (PS).

DEA and HHS Eight Factor Analyses

Pursuant to 21 U.S.C. 811(b), (c), and (f), the HHS recommended to the DEA on November 2, 2010, that FDA-approved products containing [$^{123}$I]ioflupane be removed from schedule II of the CSA. The HHS provided to DEA a scientific and medical evaluation document entitled "Basis for the Recommendation to Remove FDA Approved Products Containing [$^{123}$I]Ioflupane from Schedule II of the Controlled Substances Act (CSA)." Pursuant to 21 U.S.C. 811(b), this document contained an eight-factor analysis of FDA-approved products containing [$^{123}$I]ioflupane, along with the HHS's recommendation to remove FDA-approved products containing [$^{123}$I]ioflupane from the schedules of the CSA. The HHS later clarified to DEA that its November 2, 2010, recommendation also supports the decontrol of the substance [$^{123}$I]ioflupane.\2\

---

\2\ Letter from Karen B. DeSalvo, Acting Assistant Secretary for Health, HHS to John J. Riley, Acting Deputy Administrator, DEA (Aug. 19, 2015).

---

n response, the DEA reviewed the scientific and medical evaluation and scheduling recommendation provided by the HHS, and all other relevant data. The DEA and HHS collaborated further regarding the available information. In a letter dated February 2, 2015, the HHS provided detailed responses to specific inquiries from the DEA (submitted by letter dated September 16, 2014). Upon further review of all of the available information, the DEA completed its own eight-factor review document on FDA-approved diagnostic products containing [$^{123}$I]ioflupane (currently, only DaTscan) pursuant to 21 U.S.C. 811(c).

he FDA-approved diagnostic product, DaTscan, was used as the basis for the scientific and medical evaluation of FDA-approved products containing [$^{123}$I]ioflupane or both the HHS and DEA eight-factor analysis. Both the DEA and HHS analyses and other relevant documents are available in their entirety in the public docket of his rule (Docket Number DEA-415F) at http://www.regulations.gov under "Supporting and Related Material."

etermination To Decontrol [$^{123}$I]ioflupane

fter a review of the available data, including the scientific and medical evaluation and recommendation, the Administrator of the DEA published in the Federal egister a notice of proposed rulemaking (NPRM) entitled "Schedules of Controlled Substances: Removal of [$^{123}$I]Ioflupane from Schedule II of the Controlled ubstances Act" which proposed removal of [$^{123}$I]ioflupane from the schedules of the CSA. 80 FR 31521, June 3, 2015. The proposed rule provided an opportunity for nterested persons to file a request for a hearing in accordance with DEA regulations by July 6, 2015.

lo requests for such a hearing were received by the DEA. The NPRM also provided an opportunity for interested persons to submit written comments on the proposal n or before July 6, 2015.

omments Received

he DEA received nine comments on the proposed rule to decontrol [$^{123}$I]ioflupane. All commenters supported the decontrol of [$^{123}$I]ioflupane.

ommenters in support of decontrolling [$^{123}$I]ioflupane included an international medical society for neurology; an association of industry members that manufacture adiopharmaceuticals; a professional organization representing radiologists, radiation oncologists, interventional radiologists, nuclear medicine physicians, and medical hysicists; an advocacy group for the Parkinson's community; a trade association representing medical imaging, radiotherapy and radiopharmaceutical manufacturers; e sponsor of the drug product containing [$^{123}$I]ioflupane; a physician; a health services company; and a private citizen, all of whom expressed support for the DEA's roposal to decontrol [$^{123}$I]ioflupane. Some commenters also stated that the proposal would improve patient access to an important diagnostic pharmaceutical and educe the burden on providers and nuclear pharmacies.

he DEA appreciates the comments in support of this rulemaking.

ffective Date of the Rule

enerally, DEA scheduling actions are effective 30 days from the date of

Page 54717]]

ublication of the final rule in the Federal Register. 21 CFR 1308.45; see also 5 U.S.C. 553(d). In this instance, and in accordance with 21 CFR 1308.45, the DEA nds that the conditions of public health or safety necessitate an earlier effective date, i.e., the date of publication in the Federal Register. An earlier effective date ould allow specialized members of the healthcare community to readily utilize this substance as a component of an important diagnostic tool, DaTscan. DaTscan, hich contains [$^{123}$I]ioflupane, is used in differentiating essential tremors from tremors due to PS, (idiopathic Parkinson's disease, multiple system atrophy, and rogressive supranuclear palsy), and can help healthcare professionals provide more accurate diagnoses. This earlier effective date will allow patients to receive, ithout delay, important diagnostic testing that is critical to their health and treatment. These findings, coupled with the fact that this is an action for decontrol, dicate that conditions of public health necessitate an immediate effective date upon publication in the Federal Register.

e DEA also notes that its decision to make this rule effective upon publication aligns with the exceptions to the 30-day effective date requirement of the dministrative Procedure Act (APA). One of the APA's exceptions to the 30-day effective date is for a substantive rule granting or recognizing an exemption or which lieves a restriction. 5 U.S.C. 553(d)(3).

cheduling Conclusion

ased on consideration of all comments, the scientific and medical evaluation and accompanying recommendation and clarification from the HHS, and based on the EA's consideration of its own eight-factor analysis, the Administrator finds that these facts and all relevant data demonstrate that [$^{123}$I]ioflupane does not meet the quirements for inclusion in any schedule, and will be removed from control under the CSA.

egulatory Analyses

*ecutive Orders 12866 and 13563*

accordance with 21 U.S.C. 811(a), this scheduling action is subject to formal rulemaking procedures done "on the record after opportunity for a hearing," which e conducted pursuant to the provisions of 5 U.S.C. 556 and 557. The CSA sets forth the criteria for scheduling a drug or other substance. Such actions are exempt

from review by the Office of Management and Budget (OMB) pursuant to section 3(d)(1) of Executive Order 12866 and the principles reaffirmed in Executive Order 13563.

*Executive Order 12988*

This regulation meets the applicable standards set forth in sections 3(a) and 3(b)(2) of Executive Order 12988 Civil Justice Reform to eliminate drafting errors and ambiguity, minimize litigation, provide a clear legal standard for affected conduct, and promote simplification and burden reduction.

*Executive Order 13132*

This rulemaking does not have federalism implications warranting the application of Executive Order 13132. The rule does not have substantial direct effects on the States, on the relationship between the Federal Government and the States, or the distribution of power and responsibilities among the various levels of government.

*Executive Order 13175*

This rule does not have tribal implications warranting the application of Executive Order 13175. This rule does not have substantial direct effects on one or more Indian tribes, on the relationship between the Federal Government and Indian tribes, or on the distribution of power and responsibilities between the Federal Government and Indian tribes.

*Regulatory Flexibility Act*

The Administrator, in accordance with the Regulatory Flexibility Act (5 U.S.C. 601-612) (RFA), has reviewed this rule and by approving it certifies that it will not have a significant economic impact on a substantial number of small entities. The purpose of this rule is to remove [$^{123}$I]ioflupane from the list of schedules of the CSA. This action removes regulatory controls and administrative, civil, and criminal sanctions applicable to controlled substances for handlers and proposed handlers of [$^{123}$I]ioflupane. Accordingly, it has the potential for some economic impact in the form of cost savings.

This rule will affect all persons who handle, or propose to handle, [$^{123}$I]ioflupane. Due to the wide variety of unidentifiable and unquantifiable variables that potentially could influence the distribution and administration rates of radiopharmaceutical substances, the DEA is unable to determine the number of entities and small entities which might handle [$^{123}$I]ioflupane. In other instances where a controlled pharmaceutical drug is removed from the schedules of the CSA, the DEA is able to quantify the estimated number of affected entities and small entities because the handling of the drug is expected to be limited to DEA registrants even after removal from the schedules. In such instances, the DEA's knowledge of its registrant population forms the basis for estimating the number of affected entities and small entities. However, [$^{123}$I]ioflupane is expected to be handled by persons who hold DEA registrations regardless of whether this rule is promulgated (e.g., hospital radiopharmacies) and by persons who are not currently registered with the DEA to handle controlled substances (e.g., diagnostic clinics and imaging centers that do not routinely handle controlled substances). The DEA does not have a reliable basis to estimate the number of non-registrants who plan to handle [$^{123}$I]ioflupane.

Although the DEA does not have a reliable basis to estimate the number of affected entities and quantify the economic impact of this final rule, a qualitative analysis indicates that this rule is likely to result in some cost savings for the healthcare industry. The affected entities will continue to meet existing Federal and/or state requirements applicable to those who handle radiopharmaceutical substances, including licensure, security, recordkeeping, and reporting requirements, which in many cases are more stringent than the DEA's requirements. However, the DEA believes cost savings will be realized from the removal of the administrative, civil, and criminal sanctions for those entities handling or proposing to handle [$^{123}$I]ioflupane, in the form of saved DEA registration fees, and the elimination of additional physical security, recordkeeping, and reporting requirements.

Because of these facts, this rule will not result in a significant economic impact on a substantial number of small entities.

*Unfunded Mandates Reform Act of 1995*

The DEA has determined and certifies pursuant to the Unfunded Mandates Reform Act of 1995 (UMRA), 2 U.S.C. 1501 et seq., that this action would not result in any Federal mandate that may result "in the expenditure by State, local, and tribal governments, in the aggregate, or by the private sector, of $100,000,000 or more (adjusted for inflation) in any one year . . . ." Therefore, neither a Small Government Agency Plan nor any other action is required under provisions of UMRA.

[[Page 54718]]

*Paperwork Reduction Act*

This action does not impose a new collection of information requirement under the Paperwork Reduction Act, 44 U.S.C. 3501-3521. This action would not impose recordkeeping or reporting requirements on State or local governments, individuals, businesses, or organizations. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

*Congressional Review Act*

This rule is not a major rule as defined by section 804 of the Small Business Regulatory Enforcement Fairness Act of 1996 (Congressional Review Act (CRA)). This rule will not result in: An annual effect on the economy of $100,000,000 or more; a major increase in costs or prices for consumers, individual industries, Federal, State, or local government agencies, or geographic regions; or significant adverse effects on competition, employment, investment, productivity, innovation, or on the ability of United States-based companies to compete with foreign-based companies in domestic and export markets. However, pursuant to the CRA, the DEA has submitted a copy of this final rule to both Houses of Congress and to the Comptroller General.

**List of Subjects in 21 CFR Part 1308**

Administrative practice and procedure, Drug traffic control, Reporting and Recordkeeping Requirements.

For the reasons set out above, 21 CFR part 1308 is amended to read as follows:

**PART 1308--SCHEDULES OF CONTROLLED SUBSTANCES**

- 1. The authority citation for 21 CFR part 1308 continues to read as follows:

  Authority: 21 U.S.C. 811, 812, 871(b), unless otherwise noted.

- 2. In Sec. 1308.12, revise paragraph (b)(4) to read as follows:

**Sec. 1308.12 Schedule II.**

* * * * *

(b) * * *

(4) Coca leaves (9040) and any salt, compound, derivative or preparation of coca leaves (including cocaine (9041) and ecgonine (9180) and their salts, isomers, derivatives and salts of isomers and derivatives), and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include:

(i) Decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine; or

(ii) [[123]I]ioflupane.

* * * * *

Dated: September 4, 2015.

Chuck Rosenberg,
*Acting Administrator.*

[FR Doc. 2015-22919 Filed 9-10-15; 8:45 am]

BILLING CODE 4410-09-P

*NOTICE: This is an unofficial version. An official version of this publication may be obtained directly from the Government Publishing Office (GPO).*

EMERGENCY
DISASTER
RELIEF

Search for Year Round Pharmaceutical
Disposal Locations

DEA NATIONAL Rx
TAKEBACK
National Prescription Drug Take Back Day

Report Illicit Pharmaceutical Activities
RX ABUSE
ONLINE

HOME — CONTACT US — A-Z SUBJECT INDEX — PRIVACY NOTICE — WEBSITE ASSISTANCE

REGISTRATION

Applications
Tools
Resources
CMEA Required Training & Self-Certification
Quota Applications
Marihuana Growers Information
Notice of Registration

ABOUT US

Program Description
Customer Service Plan
DEA Forms & Applications
Mailing Addresses
Meetings & Events
What's New

REPORTING

ARCOS
BCM Online
Chemical Import/Export Declarations
CSOS (Controlled Substances Ordering System)
Theft/Loss Reporting
Import/Export
Medical Missions
Registrant Record of Controlled Substances Destroyed
Quotas
Reports Required by 21 CFR
Submit a Tip to DEA
Year-End Reports

RESOURCES

Chemical Control Program
CMEA (Combat Meth Epidemic Act)
Controlled Substance Schedules
COVID-19 Information
DATA Waived Physicians
DEA TOX Toxicology Testing Program
Drug Disposal Information
Drug and Chemical Information
E-commerce Initiatives
Federal Agencies & Related Links
Federal Register Notices
Guidance Document Portal
National Prescription Drug Take Back Day
NFLIS
Publications & Manuals
Questions & Answers
Synthetic Drugs
Title 21 Code of Federal Regulations
Title 21 USC Codified CSA

DIVERSION CONTROL
DIVISION

U.S. DEPARTMENT OF JUSTICE • DRUG ENFORCEMENT ADMINISTRATION
Diversion Control Division • 8701 Morrissette Drive • Springfield, VA 22152 • 1-800-882-9539

DEA.GOV | JUSTICE.GOV | USA.GOV | REGULATIONS.GOV

DOJ Legal Policies and Disclaimers | DOJ Privacy Policy | FOIA | Section 508 Accessibility